**UNITED STATES of America, Plaintiff,**

v.

**Nelson ALERS, Defendant.**

**Crim. A. No. 94–63.**

United States District Court,
D. New Jersey.

May 19, 1994.

James E. Cecchi, Asst. U.S. Atty., Office of U.S. Atty., Newark, NJ, for U.S.

Patrick A. Mullin, Hackensack, NJ, for defendant.

## OPINION

LECHNER, District Judge.

After a plea of guilty, defendant Nelson Alers ("Alers") was sentenced to a term of 97 months incarceration. This opinion sets forth the basis for the sentence imposed on Alers.[1]

---

1. In connection with Alers' sentencing, the United States (the "Government") submitted a letter-brief, dated 10 May 1994 (the "Government Brief"). Alers submitted a letter-brief, dated 5 May 1994 (the "Alers Brief") and a letter-brief, dated 16 May 1994 (the "Alers Reply"). The United States Probation Office (the "Probation Office") submitted a Presentence Investigation Report, dated 24 April 1994 (the "PSR").

*Facts*

On 1 June 1990, Alers, a New Jersey resident, obtained a type 01 Federal firearms license (the "Federal License") issued by the Bureau of Alcohol, Tobacco and Firearms ("ATF"). PSR, ¶ 10. The Federal License authorized Alers to receive interstate shipments of firearms but did not authorize the sale of those firearms in New Jersey. *Id.* On 14 March 1991, Alers obtained a license from the state of New Jersey authorizing him to repair firearms within the state. *Id.*

Between about 31 December 1991 and 22 January 1993, Alers used his Federal License to acquire 461 firearms from out-of-state dealers.[2] *Id.*, ¶¶ 11–12. Federal law requires any holder of a Federal firearms license to accurately record, on a Firearms Transaction Record ("Transaction Record"), the receipt and disposition of every firearm which comes into his or her possession. *See* 18 U.S.C. §§ 922(m), 923(g)(1)(A).

On 1 April 1993, ATF conducted a routine compliance inspection of Alers' business in Jersey City, New Jersey. The ATF examined Alers' Transaction Records and found they showed only two firearms were received and transferred by Alers between 1 June 1990 and 31 March 1993. PSR, ¶ 14. Upon questioning, Alers told ATF agents he had received five firearms since 1 June 1990 and that three of these were returned to the manufacturer as defective. *Id.* ATF agents issued Alers a "report of violations" for failing to maintain Transaction Records in relation to the three firearms which were returned to the manufacturer. *Id.*

A subsequent investigation by the ATF of United Parcel Service ("UPS") shipping records revealed Alers had received approximately 200 firearms through UPS by April 1993. *Id.*, ¶ 16. In all, ATF determined Alers had received 468 firearms at his residence since obtaining the Federal License. *Id.* ATF discovered that the "vast majority" of these weapons consisted of automatic handguns commonly referred to as 'Saturday Night Specials.' *Id.*, ¶ 17. Alers' Transac-

tion Records did not reveal the receipt of any of these handguns. *Id.* The ATF investigation also revealed Alers had received a variety of prohibited assault weapons, including one Chinese SKS 7.62mm semi-automatic assault rifle, two automatic assault rifles and two Intratec Model Tec–9 semi-automatic assault pistols. *Id.*

On 5 August 1993, ATF executed a search warrant at Alers' home. Thirty-one firearms were seized. Among these, seven were prohibited assault weapons. *Id.*, ¶ 19. These assault weapons included one AK–47 assault rifle, one .22 calibre rifle, one Ruger mini 14 rifle, two SKS 7.62X39 Chinese assault rifles and two AA Arms 9mm assault pistols. *Id.* On the same day, ATF arrested Alers. *Id.*, ¶ 20.

Upon his arrest, Alers admitted to buying more than 400 firearms and selling them to one Louis Demondo ("Demondo").[3] *Id.* Alers stated he did so without completing the required Transaction Records. *Id.* Alers also admitted he believed, when selling the firearms to Demondo, that Demondo was selling the firearms to illegal narcotics dealers in New York City. *Id.* Alers also admitted to having obliterated the serial numbers from the firearms before selling them to Demondo. *Id.*

After his arrest, Alers made a "controlled delivery" of twenty-one firearms to Demondo, enabling the ATF to arrest Demondo. *Id.*, ¶ 22. Upon his arrest, Demondo told ATF agents that Alers "would give him from twenty to twenty-five guns each week to sell." *Id.*, ¶ 24 "Demondo paid Alers for the firearms as he sold them and estimated he had sold as many as 400 handguns of various make and caliber." *Id.* Demondo also admitted to having sold the firearms to drug dealers. *Id.*

On 17 February 1994, Alers entered a plea of guilty to a three-count information (the "Information") charging him with several violations of Federal firearms laws. Specifically, the Information charged Alers:

---

2. On or about 28 May 1993, Alers used his Federal License to obtain two firearms from an out-of-state dealer. *See* PSR, ¶ 15.

3. Demondo "as a convicted felon is prohibited from possessing any weapons under [both] state [and] Federal law." PSR, ¶ 18.

■. knowingly received in interstate commerce approximately 468 firearms, which had previously traveled in interstate commerce, from which the manufacturer's serial number had been obliterated[,] [i]n violation of [18 U.S.C. §§ ] 922(k) and 2 ...;

■ did knowingly and wilfully make false statements with respect to information required to be kept in his Firearms Transaction Record[s], namely the number of firearms he had received and sold since obtaining a [F]ederal firearms license[,] [i]n violation of [18 U.S.C. §§ ] 924(a)(1)(A) and 2 ...; [and]

■ being a [F]ederally licensed firearms dealer, did knowingly and wilfully fail to make appropriate entries as to material facts in a record he was required to keep pursuant to [18 U.S.C. § ] 923, in that he failed to record his acquisition and disposition of approximately 468 firearms, and failed to have the purchaser of these firearms execute a Firearms Transaction Record ..., [i]n violation of [18 U.S.C. §§ ] 922(m) and 923(g)(1)(A).

Information at 3–5.

A hearing pursuant to Fed.R.Crim.P. 11 was held on 17 February 1994 to determine the voluntariness of Alers' plea (the "Rule 11 Hearing"). At the Rule 11 Hearing, Alers admitted he used his Federal License to obtain approximately 468 firearms, including prohibited assault weapons. Alers admitted he knew of the Federal reporting requirements related to the receipt and disposition of firearms, but nonetheless failed to record the receipt and disposition of the 468 firearms in his Transaction Records. Alers further admitted he obliterated manufacturer serial numbers from the firearms and sold them to Demondo. Alers also admitted to having made false statements to ATF compliance inspectors on 1 April 1993. Upon determining Alers' plea was voluntary and that the Government had established a sufficient factual basis for conviction, Alers' plea of guilty was accepted.

Alers was scheduled to be sentenced on 19 May 1994. In the PSR, the Probation Office determined Alers' total offense level was twenty-one. *See* PSR, ¶ 21. Alers "concur[red] with these guideline calcula-

tions...." Alers Brief at 2. Neither Alers nor the Government asserted any objection to any of the factual findings or guideline calculations in the PSR.

On 10 May 1994, the Government moved for an eight-level upward departure, requesting that Alers' total offense level be raised to twenty-nine and that he be sentenced to a term of 108 months. *See* Government Brief.

*Discussion*

■ Generally, a court must sentence a defendant in accordance with the guideline range determined by the United States Sentencing Commission (the "Sentencing Commission") Sentencing Guidelines Manual (the "Sentencing Guidelines"). *See* 18 U.S.C. § 3553(b). Departure from the guideline sentencing range, however, is authorized where "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the [Sentencing] [G]uidelines that should result in a sentence different from that described." *Id.; see United States v. Kikimura*, 918 F.2d 1084, 1098 (3d Cir.1990).

Application Note 16 to Guideline 2K2.1 provides:

An upward departure may be warranted in any of the following circumstances: (1) the number of firearms significantly exceeds fifty; (2) the offense involved multiple National Firearms Act weapons (*e.g.*, machineguns, destructive devices), military type assault rifles, [or] non-detectable ("plastic") firearms ...; (3) the offense involved large quantities of armor-piercing ammunition ...; or (4) the offense posed a substantial risk of death or bodily injury to multiple individuals.

U.S.S.G. § 2K2.1, Application Note 16.

■ The Third Circuit has held "that when departures are not foreclosed by [section] 3553(b), the district courts are entitled to a substantial amount of discretion in determining the extent of any departure." *Kikimura*, 918 F.2d at 1110; *see United States v. Ryan*, 866 F.2d 604, 610 (3d Cir. 1989). There is no mathematical formula for determining the extent of an upward depar-

ture. *See United States v. MacDonald*, 992 F.2d 967, 971 (9th Cir.1993); *Kikimura*, 918 F.2d at 1113. Generally, however, the extent of an upward departure should be determined by reference to the structure of the Sentencing Guidelines. *See Kikimura*, 918 F.2d at 1112 ("The principle ... that the appropriate length of a sentence should be determined from the sentencing table ... extends naturally into the context of offense-related departures...."); *United States v. Kim*, 896 F.2d 678, 685 (2d Cir.1990) ("Further guidance concerning the extent of an upward departure is provided by the structure of the sentencing table.").

As indicated, Application Note 16 authorizes upward departure where the offense at issue involved significantly more than fifty firearms. U.S.S.G. § 2K2.1, Application Note 16(1). In the instant case, it is undisputed that Alers' offense involved more than 450 firearms. An upward departure, therefore, is specifically authorized by Application Note 16(1). Alers does not, in fact, dispute that upward departure pursuant to Application Note 16(1) is warranted. Alers Brief at 2. He does, however, dispute the extent of the departure requested by the Government. The proper extent of departure under Application Note 16(1), as stated, is to be determined in accordance with the structure of the Sentencing Guidelines. *See Kikimura*, 918 F.2d at 1112.

Guideline 2K2.1(b) sets forth a table indicating the amount of upward adjustment to be imposed as a function of the number of

weapons involved in an offense. The Guideline provides:

If the offense involved three or more firearms, increase as follows:

| Number of Firearms | Increase in Level |
| --- | --- |
| 3–4 | add 1 |
| 5–7 | add 2 |
| 8–12 | add 3 |
| 13–24 | add 4 |
| 25–49 | add 5 |
| 50 or more | add 6 |

U.S.S.G. § 2K2.1(b)(1). The Sentencing Guidelines, therefore, provide for a one-point increase in offense level for each doubling of the number of firearms involved. *Id.*

■ Extrapolating from the structure of the Sentencing Guidelines, the appropriate departure under Application Note 16(1) would be determined as follows:

| Number of Firearms ("significantly" more | Extent of Departure |
| --- | --- |
| than 50)–100 | add 7 (depart 1) [4] |
| 101–200 | add 8 (depart 2) |
| 201–400 | add 9 (depart 3) |
| 401–800 | add 10 (depart 4) |

In accordance with the structure of the Sentencing Guidelines, therefore, Alers' offense, which involved significantly more than 400 firearms, warrants an upward departure of four levels under Application Note 16(1).[5] This departure raises Alers' total offense level to twenty-five.

■ As indicated, Application Note 16 also authorizes upward departure where the offense involved multiple "military-type assault

---

**4.** Guideline 2K2.1(b)(1) provides an enhancement of six levels for an offense involving "50 or more" firearms. *See* U.S.S.G. § 2K2.1(b)(1). It may be argued, therefore, that there should be no departure where the offense involves from 50 to 100 firearms. Such an approach, however, would frustrate the clear intent of the Sentencing Commission to authorize departure where the offense involves "significantly" more than 50 firearms. *See* U.S.S.G. § 2K2.1, Application Note 16(1). Moreover, such an approach would effectively preclude departure where an offense involved up to 100 firearms, when it is clear the Sentencing Commission only considered the sentences adequate for offenses involving up to 50 firearms. *See* U.S.S.G. § 2K2.1(b)(1). The approach more consonant with the structure and intent of the Sentencing Guidelines is to provide a one-point departure for any offense involving "significantly" more than 50, but less than 100,

weapons. U.S.S.G. § 2K2.1, Application Note 16.

**5.** The Government requested that the court reject the extrapolative approach, which approach was suggested by Alers. *See* Government Brief at 4; Alers Brief at 2. It is recognized that the Ninth Circuit, in *MacDonald*, rejected a strict mathematical application of Guideline 2K2.1(b) in determining the extent of departure appropriate under Application Note 16(1). *See* 992 F.2d at 971. There, the Ninth Circuit affirmed a departure twice that which was yielded by extrapolation from Guideline 2K1.1(b). *Id.* The more restrictive approach suggested by Alers and adopted here, however, comports more closely with the Third Circuit's directive that the extent of departure should be determined in accordance with the structure of the Sentencing Guidelines. *See Kikimura*, 918 F.2d at 1112.

rifles." U.S.S.G. § 2K2.1, Application Note 16(2). The PSR reflects that eleven prohibited assault weapons were involved in Alers' offense. PSR, ¶¶ 17, 19.[6] An upward departure is, therefore, also authorized pursuant to Application Note 16(2).

Alers argues there is no indication in the PSR that Alers sold assault weapons to Demondo or to any other person. *See* Alers Reply at 3. Application Note 16(2), however, provides for departure where the "offense *involved* ... military type assault rifles." U.S.S.G. § 2K2.1, Application Note 16(2) (emphasis added). There is no requirement that the defendant be found to have sold the weapons. In the instant case, it is undisputed that Alers, at the very least, violated Federal firearms reporting requirements with respect to a substantial number of assault weapons. PSR, ¶¶ 14–19. Departure is therefore warranted under Application Note 16(2).

The structure of the Sentencing Guidelines, as indicated, provides the basis for determining the extent of any departure from the guideline sentencing range. *See Kikimura,* 918 F.2d at 1112. As noted, Guideline 2K2.1(b) provides for an upward adjustment of three levels where an offense involved between eight and twelve firearms. *See* U.S.S.G. § 2K2.1(b)(1); *see also supra* at 313. This provision reflects a judgment by the Sentencing Commission that an offense involving between eight and twelve weapons is sufficiently serious to warrant a three-level increase in the defendant's guideline sentencing range. Had it considered the matter, the Sentencing Commission would surely have viewed an offense involving a similar number of prohibited assault weapons as warranting at least an equal enhancement.[7] *See Kikimura,* 918 F.2d at 1112 (The extent of a departure "may be evaluated by treating the aggravating factor as a separate crime and asking how the defendant would have been treated if convicted of it." (citation omitted)).

The structure of the Sentencing Guidelines as a whole, therefore, indicates that an upward departure of three levels is warranted under Application Note 16(2) where, as here, the offense involved eleven prohibited assault weapons. Adding this departure to Alers' offense level raises it to twenty-eight.

An additional ground for departure in this case is provided by Application Note 16(4). That provision, as indicated, authorizes upward departure where the offense "posed a substantial risk of death or bodily injury to multiple individuals." U.S.S.G. § 2K2.1, Application Note 16(4). Here, as stated, Alers admitted he sold significantly more than 400 firearms to Demondo, a person who, Alers knew, was selling these firearms to drug dealers in New York City. PSR, ¶ 20. Demondo did, in fact, distribute as many as 400 handguns in New York City. *Id.,* ¶ 24.

Departure is not warranted where the aggravating circumstances "were adequately considered by the Sentencing Commission...." *Kikimura,* 918 F.2d at 1098. It

---

**6.** As indicated, an ATF investigation of UPS records revealed Alers had received through UPS and illegally failed to record five prohibited assault weapons. PSR, ¶ 17. The weapons Alers received through UPS were: one Chinese SKS 7.62mm semi-automatic assault rifle, two automatic assault rifles and two Intratec Model Tec–9 semi-automatic assault pistols. *Id.* A subsequent ATF search of Alers' home on 5 August 1993 revealed seven unrecorded assault weapons: one AK–47 assault rifle, one .22 calibre rifle, one Ruger mini 14 rifle, two SKS 7.62X39 Chinese assault rifles and two AA Arms 9mm assault pistols. *Id.,* ¶ 19. Giving Alers the benefit of the assumption that one of the Chinese SKS 7.62 assault rifles seized by ATF on 5 August 1993 was the same SKS rifle Alers received through UPS, the total number of prohibited assault weapons involved in Alers' offense is eleven.

Considering the eleven assault weapons under both Application Note 16(2) and Application Note 16(1) would not constitute double-counting. The two provisions provide separate and independent bases for departure. In any event, in the instant case, the eleven assault weapons were not considered in connection with Application Note 16(1). Excluding these eleven assault weapons, the number of weapons involved in Alers' offense for the purposes of Application Note 16(1) is 457. That number, being significantly greater than 400, warrants a four-level upward departure under Application Note 16(1).

**7.** As indicated, the consideration of the number of assault weapons involved in Alers' offense in connection with Application Note 16(2) is not duplicative of the punishment rendered under Application Note 16(1). *See supra* note 6.

recognized that Alers received a four-level upward adjustment because he "possessed the[ ] firearms with reason to believe they would be used in connection with another felony offense." PSR, ¶ 33. That enhancement was required by Guideline 2K2.1(b)(5), which provides, in relevant part:

> If the defendant ... possessed or transferred any firearm ... with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels.

U.S.S.G. § 2K2.1(b)(5).

The Sentencing Guidelines make clear, however, that not all felonious uses of firearms were considered by the Sentencing Commission in promulgating Guideline 2K2.1(b)(5). Application Note 18 to Guideline 2K2.1 states, in full:

> As used in subsection[ ] (b)(5), "another felony offense" ... refer[s] to offenses other than explosives or firearms possession or trafficking offenses. *However, where the defendant used or possessed a firearm or explosive to facilitate another firearms or explosives offense, (e.g.,* the defendant used of possessed a firearm to protect the delivery of an unlawful shipment of explosives), an upward departure ... may be warranted.

U.S.S.G. § 2K2.1, Application Note 18 (emphasis added); *see* 18 U.S.C. § 3553(b) ("In determining whether a circumstance was adequately taken into consideration [so as to render departure inappropriate], the court shall consider [*inter alia* ] official commentary of the Sentencing Commission.")

Similarly, the Third Circuit indicated in *Kikimura,* 918 F.2d 1084, that not all unlawful uses of firearms are equally culpable. There, a defendant convicted of unlawfully possessing and transporting explosives was assessed an upward departure because his crime was committed with intent to commit murder. *Id.* at 1097. The Circuit affirmed departure on this ground, rejecting the de-

fendant's argument that "[t]he [Sentencing] [G]uidelines begin with a presumption that illegally possessed weapons are intended for unlawful use against people, and that presumption is factored into the base offense level." *Id.* at 1109. The Circuit stated:

> [W]e agree with [the defendant] to the extent he suggests that the base offense levels incorporate some presumption of intended unlawful use. That use, however, might be nothing more than an unauthorized resale at a profit.... Moreover, many typical intended unlawful uses of a firearm—for example, to commit a robbery—do not imply an altogether more grave intent to discharge the firearm at the victim of the robbery. We desire to avoid the anomalous result described above, and we are mindful of a general interpretive posture under which the [Sentencing] Commission's silence regarding a particular circumstance should ordinarily be construed as an intent not to foreclose departure. *We therefore conclude that these various possible intended unlawful uses of a firearm are sufficiently different from the intended unlawful use [here at issue] that the consideration of intended unlawful uses in [the Sentencing Guidelines] does not preclude departure on the basis of an intent to commit murder.*

*Id.* (emphasis added).

In the instant case, as in *Kikimura,* Alers' offense presents aggravating circumstances far more grave than those the Sentencing Guidelines appear to consider. Alers did not merely transfer firearms with knowledge that they would be used in connection with a felony, as provided for in Guideline 2K2.1(b)(5). He transferred them for distribution to drug dealers.[8] The dangers posed to innocent bystanders by drug-related violence is well-documented and need not be recounted in detail here. Suffice it to say, however, that violence, and corresponding

---

8. Indeed, because Demondo was a felon prohibited by law from possessing a firearm, Alers' very transfer of firearms to Demondo was "with knowledge ... that [the firearms] would be used or possessed in connection with another felony." U.S.S.G. § 2K2.1(b)(5); *see* PSR, ¶ 18. There-

fore, if departure were denied because of the PSR's consideration of Guideline 2K2.1(b)(5), Alers would not be punished for the independent aggravating circumstance of having transferred firearms for distribution into the drug underworld.

injury and death to bystanders, is virtually a necessary incident of arming drug dealers.[9]

Alers' offense, moreover, was not merely a one-time bulk transfer of firearms. Demondo, as stated, told ATF agents that Alers, over a sustained period of time, gave him "from twenty to twenty-five guns each week to sell." PSR, ¶ 24. The majority of these weapons were inexpensive Saturday Night Specials, easily concealed and transferred. *Id.,* ¶ 17. Alers, therefore, caused more than 400 weapons to be distributed into the drug underworld in such a way as to make them untraceable and virtually irretrievable by law enforcement authorities.[10] In so doing, Alers created a near certainty that significant personal harm would come from his offense. Alers' offense, in short, did much more than facilitate another felony. It not only "posed a substantial risk of death or bodily injury to multiple individuals;" it all but guaranteed such harm. U.S.S.G. § 2K2.1, Application Note 16(4). Upward departure pursuant to Application Note 16(4), therefore, is warranted.

Guidance as to the extent of upward departure is provided by Guideline 5K2.6, which provides for departure where an offense involves "a weapon or dangerous instrumentality." U.S.S.G. § 5K2.6; *see* U.S.S.G. § 2K2.1, Application Note 18 (referring court to Guideline 5K2.6 in determining extent of departure). That guideline provides: "The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others." U.S.S.G. § 5K2.6.

In the instant case, as stated, Alers' distribution of weapons into the drug underworld posed, and will continue to pose, a substantial danger to other individuals. This danger,

moreover, will be exceptionally difficult, if at all possible, to alleviate. Under these facts, an upward departure of two points is well-warranted. Adding this departure to Alers' offense level, Alers' total offense level becomes thirty.

Taking into account Alers' criminal history category of I, the Sentencing Guidelines dictate a sentence between 97 and 121 months. *See* U.S.S.G., Sentencing Table. In recognition of Alers' cooperation with the ATF in the apprehension of Demondo,[11] which cooperation ostensibly posed a substantial risk to Alers, Alers was sentenced to a term of 97 months.

*Conclusion*

For the reasons set forth above, Alers was sentenced to a term of 97 months.

---

9. The unique dangers posed by arming drug dealers are well-known in society at large. Alers, however, as a holder of Federal and state firearms licenses, had reason to be particularly aware of such dangers.

10. As the Government points out, guns distributed by Alers will be in use throughout the Metropolitan area for several years to come. *See* Government Brief at 4–5.

11. Alers' assistance was considered in granting him a downward adjustment of one additional

level for acceptance of responsibility, pursuant to Guideline 3E1.1. *See* PSR, ¶ 39; *see also* U.S.S.G. § 3E1.1(b). Guideline 3E1.1, however, only provides for consideration of a defendant's conduct in timely informing the authorities of his own role in the offense. *See* U.S.S.G. § 3E1.1(b)(1–2). Alers, in this case, confessed to his own involvement and made a "controlled delivery" of firearms to Demondo, enabling the authorities to arrest Demondo. PSR, ¶ 22.