UNITED STATES of America,

v.

Maurice BRUNET, Defendant.

No. 00 Cr. 33(SWK).

United States District Court,
S.D. New York.

Feb. 16, 2001.

Martin J. Siegel, Justin S. Weddle, Assistant United States Attorney, New York City, for Maurice Brunet.

## *OPINION*

KRAM, District Judge.

On February 7, 2001, defendant Maurice Brunet ("Brunet") was sentenced to a term of 46 months incarceration. This opinion sets forth the basis for the sentence imposed on Brunet.[1]

## BACKGROUND

In early May 1999, an undercover officer ("UC") posted a gun advertisement on the Internet. *See* PSR, ¶ 4. Within a few days of placing the ad, the UC was contacted by Brunet via e-mail. *See id.,* ¶ 5. Brunet inquired as to whether or not the guns in question were assembled and whether or not they were fully or semiautomatic in function. *See id.* The UC informed Brunet that the weapons were semi-automatic and that Bureau of Alcohol, Tobacco, and Firearms ("ATF") forms would have to be filed to make the transfer. *See id.* Brunet responded that he was not interested in purchasing registered firearms, and that he

had already sold his registered collection and was in the process of replacing them with unregistered items. *See id.*

Over the next few months, the UC exchanged e-mail messages with Brunet regarding various illegal firearms, including fully-automatic machine guns. *See* PSR, ¶ 7. On August 26, 1999, the UC telephoned Brunet. *See id.,* ¶ 8. During the course of this telephone conversation, Brunet indicated that he wanted to transfer to the UC two "pineapple" style hand grenades in return for twenty blasting caps. *See id.* Brunet also stated that he needed the blasting caps for his 27 blocks of C–4 plastic explosive. *See id.*

On August 27, 1999, ATF agents arrested Brunet at his home pursuant to a search and arrest warrant. *See* PSR, ¶ 10. A search of Brunet's basement apartment in Brooklyn, New York resulted in the recovery of the following items: an M–11 9mm assault weapon; an M–12 .380 caliber assault weapon (machine gun); an AR–15 type .223 caliber assault rifle; a Sten-type 9mm machine gun; a functioning hand grenade; a block of C–4 explosives (white clay compound); over 1,500 rounds of ammunition, in various calibers; two gun-barrel extenders; two silencers; and 43 black tire spikes, which can be used to puncture the wheels of a chase vehicle. *See id.; see also* Gov't Memo. at 5, 8–9. ATF agents also recovered assorted instructional video tapes concerning bomb and silencer making; one box of books concerning bomb, gun, and silencer making; letters addressed to "Mike," offering to sell illegal

---

**1.** In connection with Brunet's sentencing, the Government submitted a Memorandum in Support of Its Upward Departure Motion, dated January 17, 2001 ("Gov't Memo."), and a letter-brief in opposition to Brunet's motion for a downward departure, dated January 24, 2001 (the "Government Reply"). Brunet submitted a letter-brief requesting a downward

departure, dated January 16, 2001 (the "Brunet Brief") and a letter-brief in opposition to the Government's motion, dated January 24, 2001 (the "Brunet Reply"). The United States Probation Office (the "Probation Office") submitted a Presentence Investigation Report dated June 28, 2000 (the "PSR").

machine gun parts and plastic explosives; and a questionnaire entitled "Resistance and Guerilla Warfare." *See* PSR, ¶ 11. The questionnaire asked, *inter alia,* "What is the police response time in Brooklyn and Manhattan?", and "How many rounds does a police response team have?" *Id.* Finally, agents discovered several bottles of what appeared to be human urine, along with instructions for manufacturing explosives out of uric acid crystals, which can be distilled from urine. *See* Affirmation of Detective Robert Baumert ("Baumert Aff."), ¶ 9.

On March 22, 2000, Brunet appeared before the Court and pled guilty to a one-count information (the "Information") charging him with unlawful receipt of unregistered firearms, in violation of 26 U.S.C. § 5861(d). On October 19, 2000, the Court ordered Brunet to undergo a psychiatric examination before sentencing. *See* Report of Dr. Azariah Eshkenazi, dated December 5, 2000 ("Eshkenazi Report"); Addendum to Eshkenazi Report, dated January 30, 2001 ("Eshkenazi Addendum"). After several adjournments of the sentencing date, Brunet was sentenced on February 7, 2001. Prior to this date, the Government moved for an upward departure from the United States Sentencing Commission Sentencing Guidelines (the "Sentencing Guidelines," or "U.S.S.G."), and Brunet moved for a downward departure. *See* Gov't Memo.; Brunet Brief. Neither party objected to the Probation Office's Sentencing Guidelines calculation resulting in a Sentencing Guidelines range of 27 to 33 months custody for Brunet.[2] At sentencing, the Court granted the Government's application for an upward departure and sentenced Brunet to 46 months custody.

**2.** The Probation Office determined that Brunet's total offense level was eighteen, and that Brunet has no criminal history and therefore

## DISCUSSION

### I. Applicable Law

In general, a district court must sentence a defendant within the range determined by the Sentencing Guidelines. *See* 18 U.S.C. § 3553(b). Departures from the guideline range, however, are authorized "if the court determines 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission.'" *United States v. Khalil,* 214 F.3d 111, 123 (2d Cir.2000) (*citing* U.S.S.G. § 5K2.0). The Court may depart based on misconduct by the defendant that did not lead to conviction if the defendant committed acts "relate[d] in some way to the offense of conviction, even though not technically covered by the definition of relevant conduct." *United States v. Tropiano,* 50 F.3d 157, 164 (2d Cir. 1995). "In departing pursuant to § 5K2.0, the court must give explanations for the imposition and extent of the departure that are sufficient to permit meaningful appellate review, but it need not provide step-by-step explanations." *United States v. Khalil,* 214 F.3d at 123.

### II. Basis for Departure

Application Note 16 to U.S.S.G. Section 2K2.1 states that "[a]n upward departure may be warranted in any of the following circumstances: ... (2) the offense involved multiple National Firearms Act weapons (*e.g.,* machineguns, destructive devices), military type assault rifles, non-detectable ('plastic') firearms ... or (4) the offense posed a substantial risk of death or bodily injury to multiple individuals." U.S.S.G. § 2K2.1, Application Note

a criminal history category of I. *See* PSR, ¶¶ 25, 28–29.

16. In the instant case, an upward departure is warranted for both of these reasons. First, an upward departure is warranted because Brunet's offense involved several especially dangerous National Firearms Act weapons, including two fully automatic machine guns.[3] *See* Baumert Aff., ¶ 5. In addition, Brunet possessed a semi-automatic AR–15 assault rifle in short-barreled form, which fires high-velocity bullets capable of penetrating "most body armor, standard police 'bullet-proof' vests, and automobiles." *Id.*, ¶ 6. Brunet also possessed a functioning M–1 hand grenade. The M–1 hand grenade "is capable of killing or inflicting serious bodily injury on any person within approximately 50 yards of its blast." *Id.*, ¶ 8. The grenade is especially dangerous because its blast is "omnidirectional and therefore indiscriminate in its targets." *Id.*

Thus, because Brunet's offense involved multiple National Firearms Act weapons, the Court finds that upward departure is authorized pursuant to Application Note 16(2). As to the appropriate extent of the departure, the Court notes that Sentencing Guideline Section 2K2.1(b) provides for an upward adjustment of one level to the base offense level where the offense involves between three and four firearms. *See* U.S.S.G. § 2K2.1(b)(1). Using this provision as a guide, the Court finds that a similar increase (i.e., one level) is appropriate for an offense involving the same number of National Firearms Act weapons. At least one other court has adopted this reasoning and approach in upwardly departing from the Guidelines pursuant to Application Note 16(2). *See United States v. Alers*, 852 F.Supp. 310, 314 (D.N.J.1994). Adding this departure results in an offense level of 19 for Brunet.

The second basis for an upward departure is that "the offense posed a substantial risk of death or bodily injury to multiple individuals." U.S.S.G. § 2K2.1, Application Note 16(4). In addition to the National Firearms Act weapons recovered from Brunet's apartment, agents retrieved a block of clay-like explosives,[4] which can be used to create pipe bombs. Brunet kept this block of explosives, along with his arsenal and over 1,500 rounds of live ammunition, in his apartment located on a city street in Brooklyn, New York. An officer who participated in executing the search warrant for Brunet's home submits that "[i]f the defendant's hand grenade and/or block of clay-like explosives had been detonated within his apartment, either by accident or intention, they would likely have destroyed the house in which he and others live, as well as severely damaging other buildings within one or two houses of his house." Baumert Aff., ¶ 11. Such an explosion would also have

---

3. Brunet possessed a Mac–12 style machine pistol (alternately known as an M–12 assault weapon) and a Sten-type machine gun. *See* Baumert Aff., ¶ 5. Both of these weapons were tested by the ATF lab and determined to be functioning machine guns. *See id.* The Mac–12 can empty its magazine of 30 rounds in approximately 1.5 seconds. *See id.* The Sten-type gun can empty its 32 round magazine in approximately 3 seconds. *See id.*

4. The block of clay-like explosives was tested by the ATF's Forensic Science Laboratory and its Explosive Technology branch, as well as by the NYPD. *See* ATF Laboratory Report ("Lab Report"), attached to Gov't Memo. as Exh. "H." Laboratory analysis indicates that the block of explosives is a volatile perchlorate explosive mixture, but is not a "plastic explosive" as that term is defined in 18 U.S.C. Section 841 because it does not meet certain vapor pressure criteria. *See id.; see also* Gov't Memo. at 9–10. Nor is it a *destructive device* as defined by the National Firearms Act, because the material had not been incorporated into a bomb design. *See* Gov't Memo. at 9–10. Nevertheless, the ATF characterized the explosive as "very violent reacting material." Lab Report at 3.

ignited the live ammunition contained in Brunet's apartment, and the resulting fires could have spread to surrounding buildings. *See id.* Thus, by keeping the live hand grenade, plastic explosives, and vast quantities of ammunition in his apartment, Brunet posed an unconscionable and "substantial risk of death or bodily injury to multiple individuals." U.S.S.G. § 2K2.1, Application Note 16(4). Under these facts, the Court finds that an upward departure of at least two offense levels is warranted under Application Note 16(4). *Cf. United States v. Huddleston,* 929 F.2d 1030 (5th Cir.1991) (upholding seven-level departure for reckless endangerment to community by improperly hauling explosives through residential areas); *United States v. Doe,* 18 F.3d 41 (1st Cir.1994) (upholding two-level increase for endangering lives in high speed chase); U.S.S.G. § 2F1.1(b)(2) (mandating two-level enhancement for scheme to defraud multiple victims).

Taking into account Brunet's criminal history category of I, his pre-motion offense level of 18, the one-level upward departure for possessing multiple National Firearms Act weapons, and the two-level upward departure for posing a substantial risk of death or injury to multiple individuals, the Sentencing Guidelines dictate a sentence between 37 and 46 months. *See* U.S.S.G., Sentencing Table. Accordingly, and for the reasons set forth above, the Court sentenced Brunet to a term of 46 months.

## CONCLUSION

For the reasons set forth above, the Court granted the Government's application for an upward departure from the Sentencing Guidelines range, and sentenced Brunet to a term of 46 months.