

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-21-2002

# USA v. Cicirello

Precedential or Non-Precedential: Precedential

Docket No. 01-3682

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Cicirello" (2002). *2002 Decisions.* Paper 525.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/525

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed August 21, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3682

UNITED STATES OF AMERICA

v.

MICHAEL CICIRELLO,
      Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 01-cr-00257)
District Judge: Honorable Berle M. Schiller

Argued April 22, 2002

Before: SCIRICA, RENDELL and NOONAN,*
Circuit Judges

(Filed August 21, 2002)

      Burton A. Rose, Esq. [ARGUED]
      235 South 8th Street
      Washington West Building
      Philadelphia, PA 19106
Counsel for Appellant

_____

* Honorable John T. Noonan, Jr., Circuit Judge of the United States
Court of Appeals for the Ninth Circuit, sitting by designation.

      Joan L. Markman, Esq. [ARGUED]
      Office of United States Attorney
      615 Chestnut Street, Suite 1250
      Philadelphia, PA 19106
      Counsel for Appellee

OPINION OF THE COURT

RENDELL, Circuit Judge.

On January 9, 2001, Mark Smith, James Williams, and
Christopher Williams burglarized the Southeast Archery
and Sports Center in Folcroft, Pennsylvania, breaking
display cases and stealing 22 firearms, all but one of which
were handguns. They had discussed the plan with Michael
Cicirello, but he had declined to participate. However, after
the burglary, when the burglars returned to their residence,
Cicirello agreed to dispose of the firearms and did so the
next day, then turning over the proceeds to the burglars.

Cicirello pled guilty in the United States District Court for the Eastern District of Pennsylvania to unlawfully disposing of stolen firearms in violation of 18 U.S.C. S 922(j). At issue on appeal is the sentence imposed by the District Court under the United States Sentencing Guidelines ("U.S.S.G." or "guidelines"). The Presentence Investigation Report ("PSI") noted that, given the number of guns sold illegally and Cicirello's prior record, his base offense level was 13, and his criminal history category was I, and therefore the guideline range of 12-18 months would apply. However, the District Court enhanced Cicirello's offense level and departed upward, and also increased his criminal history category based on other contacts with the criminal justice system, sentencing Cicirello to 60 months' incarceration, 3 years' supervised release, and restitution of $15,419.38.

Specifically, the Court applied the upward adjustment of 4 levels under S 2K2.1(b)(5) for the transfer of a firearm "with knowledge, intent or reason to believe that it would be used or possessed in connection with another felony offense" and ruled that a 2-level upward departure was warranted under S 2K2.1, Application Note 16(4) based on

2

the "substantial risk of death or bodily injury to multiple individuals."

On appeal, Cicirello contends that there was insufficient evidence to support the upward departure and the enhancement, and he objects to the Court's consideration of his previous Accelerated Rehabilitative Disposition ("ARD")1 and an open charge of auto theft in departing with respect to his criminal history, complaining in addition that the extent of the criminal history departure -- two levels -- was not reasonable under the circumstances.

The District Court had jurisdiction pursuant to 18 U.S.C. S 3231, and we have jurisdiction pursuant to 18 U.S.C. S 3742(a) and 28 U.S.C. S 1291.

Our standard of review in Sentencing Guidelines' cases is multi-faceted. We review the District Court's legal interpretations and applications of the guidelines de novo. United States v. Evans, 155 F.3d 245, 252 (3d Cir. 1998). The District Court's factual findings are reviewed for clear error. Id. Finally, the District Court's decision to depart is due substantial deference and is reviewed for an abuse of discretion. United States v. Jacobs, 167 F.3d 792, 798 (3d Cir. 1999).

Cicirello contends that the District Court erred by increasing his offense level pursuant to U.S.S.G. S 2K2.1(b)(5) and abused its discretion by departing upward based on U.S.S.G. S 2K2.1, Application Note 16(4). He also urges that the Court abused its discretion by departing as to his criminal history category, from category I to category III, pursuant to U.S.S.G. S 4A1.3. We will vacate the District

Court's sentencing order and remand for resentencing consistent with this opinion.

BACKGROUND

An understanding of what the record did and did not reveal as to both the crime and Cicirello's prior criminal

---

1. Accelerated Rehabilitative Disposition is "a rehabilitation program that allows prosecutors to avert a trial and defendants to ultimately earn a dismissal of criminal charges by satisfactorily completing a probationary program." Cain v. Darby Borough, 7 F.3d 377, 382 (3d Cir. 1993).

history is essential to our disposition. The record is sparse regarding facts as to Cicirello's disposal of the firearms in question. We know only that, after having declined to participate in the plans to steal them, he volunteered to dispose of them. According to the PSI, Cicirello's attorney explained: "Mr. Cicirello, knowing that the firearms had been stolen, said that he knew where they could get rid of them. In the morning, Mr. Cicirello disposed of the stolen property." His counsel advised the government that he did so fearing that the burglars might use them to harm others. He disposed of them and, according to a statement given by Mark Smith, one of the burglars, in connection with the PSI, Cicirello turned over the entire $1,300 in proceeds to him the night following the burglary. We know nothing as to where, how, or to whom Cicirello sold the guns. He declined to provide details to the government. The Sentencing Memorandum submitted by defense counsel states: "Defendant did not provide assistance to law enforcement because he is afraid for his safety and that of his family should he cooperate, however the defendant has always fully accepted his role in the offense." Cicirello was indicted May 11, 2001, and pled guilty May 25, 2001; the Judgment and Commitment Order was entered on September 20, 2001.[2]

We do know that three of the twenty-two guns were later confiscated in connection with criminal activity-- one from a serial armed robber two and a half weeks after the burglary, and two others from a drug stash house six months later. We also know that this was Cicirello's first adult conviction for a criminal offense. His criminal record included a juvenile adjudication for mischief, and an adult ARD for a car theft charge, reflected in the PSI as his having operated a vehicle without the victim's consent. The PSI also revealed an arrest for an auto theft that occurred in May 2000 that was still pending. Cicirello had not been arrested for that offense until August 2001 and his attorney indicated that his client had purchased the car lawfully and was not involved in the theft.

---

2. In accordance with U.S.S.G. S 1B.11, we apply the 2000 edition of the Sentencing Guidelines.

As indicated above, the PSI recommended a sentence in the guideline range of 12 to 18 months. It did not recommend an enhanced offense level under S 2K2.1(b)(5) because "[t]he probation officer does not have specific information connecting the defendant's sale of firearms with the commission of other felony offenses." It recommended an offense level of 16, which included a 4-level increase from the base offense level to take into account the number of weapons involved, then reduced it 3 levels, for acceptance of responsibility, to level 13 and calculated a criminal history category of I, with the resulting guideline range of 12 to 18 months. The PSI did note, under"Factors That May Warrant Departure" that, had Cicirello's previous theft charge been a conviction, not an ARD, the criminal history category would have been II; furthermore, since he would then have committed the instant offense while on probation, his score would have been 4 and the criminal history category III.

The government's Sentencing Memorandum took the position that Cicirello had not accepted responsibility, and urged the Court to depart upward two criminal history categories because Cicirello's history seriously under-represented his background and the likelihood he would commit further crimes. The government "reluctantly" did not seek an enhancement under S 2K2.1(b)(5) based on existing caselaw and the fact that it could not establish the circumstances of Cicirello's sale. It also footnoted the fact that it might make an argument not actually made in the memorandum, regarding a departure based on Application Note 16(4) to S 2K2.1.

The District Court made its view of Cicirello's misdeeds clear from the outset:

> In the early morning hours of January 9, 2001, Cicirello's acquaintances burglarized a sporting goods store, stealing twenty-two firearms, primarily handguns of various calibers. Although the business and its insurance carrier were immediate victims of the burglary, Cicirello's subsequent conduct expanded the scope and severity of this crime in ways impossible to express in terms of mere monetary losses. That is, in

> wanton disregard for community safety, well-being, and peace of mind, Cicirello sold these guns on the streets.

The Court then proceeded to address the issues charged by Cicirello as error before us, first determining that it was "perfectly clear" that the enhancement underS 2K2.1(b)(5) was applicable. United States Sentencing Guidelines S 2K2.1(b)(5) states:

If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18.

The Court was swayed by the fact that the guns were concealable weapons, thus weapons of choice in street crimes, as well as the fact that "he sold the guns on the streets." The Court declined to rely on the fact that the guns had later surfaced in connection with other crimes. Footnoting a quotation from Bob Dylan to emphasize that "exacting evidence is superfluous" and "any contention that Cicirello did not know or have cause to know that the guns he sold would be used feloniously defies common sense," the Court ruled the enhancement applicable. The Court also ruled that Cicirello did not qualify for credit for acceptance of responsibility, but that issue has not been raised before us on appeal.

The Court then turned its focus to the issue of whether a departure was warranted for "substantial risk" under Application Note 16(4) to S 2K2.1: "The ruinous effects of Cicirello's crime reveal its heinousness: the toll of putting stolen guns on the streets is borne heavily and borne by many. Consequently, I upwardly depart from the sentence yielded by the Guidelines." The Court noted the applicable departure standard -- aggravating circumstance not adequately taken into consideration by the guidelines -- and concluded that "a score of lethal, concealable firearms on the streets" occasioned by Cicirello qualified as an "extreme aggravating factor," and their continued presence in the streets posed a continuing danger, warranting an upward departure of two levels.

6

Finally, the Court addressed Cicirello's criminal history and concluded that criminal history category I underrepresented his "evolving record of criminal dealings." Noting that Cicirello's previous behavior could not be counted, "no matter how relevant or troubling, because of the absence of a resulting conviction," the Court referenced the reasoning set forth in the "Facts That May Warrant Departure" section of the PSI and departed two categories, from criminal history category I to criminal history category III.

These calculations yielded an offense level of 22, criminal history category of III, guideline range of 51 to 63 months.3

DISCUSSION

Cicirello's appeal presents what we commonly refer to as "a guidelines case." The propriety of the sentence imposed on Cicirello will rise and fall based on whether the District Court applied the guidelines correctly. We are convinced it

did not. As with all guidelines cases, we start with the pertinent guideline provisions -- those relevant to the calculation of the offense level and those impacting on the appropriate criminal history category.

The guideline provision governing Cicirello's offense is S 2K2.1, "Unlawful Receipt, Possession or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition." The guideline provisions themselves are comprehensive, covering multiple possible scenarios and attributing base offense levels from 6 to 26, depending on the specific type of offense, the type of firearms, and the defendant's past criminal history involving weapons or drugs. The guideline also includes "Specific Offense Characteristics" with additions and subtractions depending on related factors, such as quantity. Had Cicirello sold 8 guns, his base level of 12 would have been increased by 3. Because he sold between

_____

3. The Court's written opinion also stated at the end, after its determination of the 60-month sentence: "In any event, even without any of the enhancements or upward departures outlined above, I still would sentence this Defendant to sixty months solely on the basis of Application Note 16(4) of U.S.S.G. S 2K2.1."

13 and 24 guns, it was properly increased by 4. Five other specific characteristics can result in decreases or increases.4 One such characteristic was found by the District Court to apply here, namely, (5) for transfers "with knowledge, intent, or reason to believe it would be used or possessed in connection with another felony offense" for which 4 levels were added. The guideline is then followed by 19 application notes, one of which provides:

> An upward departure may be warranted in any of the
> following circumstances: (1) the number of firearm s
> significantly exceeded 50; (2) the offense involve d
> multiple National Firearms Act weapons (e.g.,
> machineguns, destructive devices), military type
> assault rifles, non-detectable ("plastic") firearms
> (defined at 18 U.S.C. S 922(p)); (3) the off ense involved
> large quantities of armor-piercing ammunition (defined
> at 18 U.S.C. S 921(a)(17)(B)); or (4) the of fense posed a
> substantial risk of death or bodily injury to multiple
> individuals.

U.S.S.G. S 2K2.1, Application Note 16 (2000). This last circumstance (4) was relied on by the District Court to increase the offense level by 2 levels.

Under the applicable criminal history category guideline, S 4A1.1, Cicirello was assigned to category I, for those with 0 or 1 point. He had no adult criminal convictions. His juvenile conviction counted for only 1 point, and his ARD, in which there was no finding or admission of guilt in the proceedings, was specifically removed from consideration by

virtue of the provisions of Application Note 3 toS 4A1.1(c).5

Upward departures from designated criminal history categories are governed by U.S.S.G. S 4A1.3 based on the inadequacy of one's criminal history category:

_____

4. It is curious that neither the parties nor the PSI references S 2K2.1(b)(4), which provides a 2-level increase when stolen firearms are involved, and which would seem to apply to this situation.

5. The PSI noted one point for Cicirello's juvenile conviction based on S 4A1.2(d)(2)(B) because the instant offense occurred within 5 years of his juvenile sentencing. The PSI also properly gave 0 points for the ARD, referencing it separately under "Other Criminal Conduct."

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning:
>
> (a) prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses);
>
> (b) prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions;
>
> (c) prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;
>
> (d) whether the defendant was pending trial or sentencing on another charge at the time of the instant offense;
>
> (e) prior similar adult criminal conduct not resulting in a criminal conviction.
>
> A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes. . . . The court may, after a review of all the relevant information, conclude that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category, and therefore consider an upwards departure from the guidelines. However, a prior arrest record itself shall not be considered under S 4A1.3.

U.S.S.G. S 4A1.3 (2000) (emphasis added).

Parsing the guidelines, however, is only part of the task, as the caselaw construing the guidelines also impacts how the District Court should carry out its sentencing role. For

clarity, we will consider relevant case authority in the context of the District Court's ruling on the specific issues presented in this appeal.

I.

Enhancement of Offense Level Under S 2K2.1(b)(5)

As we discuss below, the District Court referenced two cases in passing, but neither supports the application of this enhancement in a situation where, as here, both the government and pretrial services seemed to acknowledge that there was no evidence as to the circumstances of Cicirello's sale. As noted above, the PSI explicitly provided that there was no "specific information connecting the defendant's sale of firearms with the commission of other felony offenses," and, accordingly, the probation officer concluded that the S 2K2.1(b)(5) enhancement was inapplicable. While the sentencing court is always free to draw inferences from facts of record, here there are no facts from which Cicirello's knowledge, intent or belief at the relevant time can be gleaned, let alone knowledge or reasonable belief that the guns would be used in connection with another felony. Neither fear for his safety several months later, nor the later use of three of the guns in connection with criminal activity is probative of the requirement that the transfer be "with knowledge, intent, or reason to believe." All we know of the transfer was that it took place in one day and produced $1,300. For all we know, Cicirello sold the guns to a pawn shop, a gun dealer, or a relative, any of whom later could have turned out to be engaged in criminal activity, and could have perhaps threatened Cicirello after the fact.

While the government bears the burden of proving by a preponderance of the evidence that the facts warrant an enhancement, see United States v. Napier, 273 F.3d 276, 279 (3d Cir. 2001), that is not to say that the government must prove the precise means and manner of transfer. It must, however, present some facts to show the enhancement should be applied, facts from which an inference of Cicirello's knowledge or reason to believe can be drawn.

For example, in United States v. Bass, 54 F.3d 125 (3d Cir. 1995), we noted that had the guidelines applicable here been in effect, Bass might have had the enhancement applied to him based on his conviction for conspiring with

individuals involved in an interstate ring selling guns to straw buyers. And in United States v. James, 172 F.3d 588 (8th Cir. 1999), the Court of Appeals for the Eighth Circuit affirmed the enhancement's application to an admitted gang member with a history of violence, who had been previously convicted of carrying a concealed weapon and was convicted in a scheme to sell guns to his friends, some of whom were also gang members. The court cited the sentencing court's conclusion with approval: "if he didn't specifically know, he certainly had good reason to believe that these guns were going into gang activities in south Chicago." Id. at 594. And in United States v. Messino, 55 F.3d 1241 (7th Cir. 1995), the fact that the defendant sold the confidential informant a silencer, and had been told that the confidential informant purchaser was well connected with local crime figures and was willing to commit murder, was a sufficient basis for the enhancement.

Other courts of appeals affirming the application of this enhancement have similarly found the facts to permit some basis to support the required finding as to the convicted seller's knowledge, intent, or reason to believe. 6

In United States v. Askew, 193 F.3d 1181 (11th Cir. 1999), on the other hand, the Court of Appeals for the Eleventh Circuit concluded that the fact that the defendant -- who was not the actual seller -- was aware the guns being sold were stolen and were the kinds of guns that turn up at crime scenes, was not sufficient to justify an enhancement under S 2K2.1(b)(5). In commenting on the government's burden, the court noted that, while the preponderance of the evidence is not a high standard of proof, "[i]t is not, however, a toothless standard, either, and

---

6. See United States v. Askew, 193 F.3d 1181, 1185 n.4 (11th Cir. 1999) (providing a list of cases in which "the government introduced evidence showing why that particular defendant had 'reason to believe' the transferee would use the firearm in a felony").

a district court may not abdicate its responsibility to ensure that the prosecution meets this standard before adding months or years onto a defendant's prison sentence." Askew, 193 F. 3d at 1183. The court found that the record did not eliminate the "innocent" possibilities regarding Askew's knowledge and concluded that because the evidence was "in equipoise," the government had failed to meet its burden and the enhancement was inappropriate.7 The same reasoning and result applies here. We know nothing about Cicirello or the circumstances of the sale that undermine the "innocent" possibilities that are at least as likely as the guilty ones.

For this same reason, the cases cited by the District Court are unhelpful. United States v. Cofske, 157 F.3d 1 (1st Cir. 1998), involved the surreptitious transfer of guns

in the middle of the night in exchange for illegal drugs and money, and in United States v. Nunez, 146 F.3d 36 (1st Cir. 1998), the defendant sold explosives to a transferee who had told the defendant he wanted the pipe bomb for use against a rival gang, and the defendant himself had admitted post-arrest that he made the pipe bombs because he wanted to hurt gangs. The factual predicates obviously present in those cases are simply not replicated in the evidentiary record here.

Finally, the factors relied upon by the District Court -- the sale on "the streets" and the type of guns-- do not save its ruling. The sale "on the streets" is simply unfounded, as the record only indicates that Cicirello "disposed of " the guns, not where, how, or to whom. With respect to the type of guns, while 21 of the 22 guns stolen were handguns, this fact alone certainly does not establish that Cicirello had the required mental state.

The facts present here are not enough from which to infer knowledge, intent, or reason to believe, and make this case readily distinguishable from cases affirming the 4-level increase. As the District Court's factual determination that defendant had reason to believe that the stolen firearms

---

7. See United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995); United States v. Shriver, 967 F.2d 572, 575 (11th Cir. 1992); United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989).

12

would be used in another felony was clearly erroneous, we conclude that the District Court erred in imposing the enhancement and Cicirello is entitled to be resentenced without its application.

II.

Departure Upward for Substantial Risk of
Death or Bodily Injury

The District Court is authorized to depart from the sentencing range where "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. S 3553(b). Therefore, the key issue is whether the aggravating circumstances found by the District Court were "taken into account" by the Commission. The Supreme Court has explained that before departing, the District Court must find "certain aspects of the case . . . unusual enough for it to fall outside the heartland of cases." Koon v. United States, 518 U.S. 81, 98 (1996). While we defer to the District Court's decision to depart, the legal conclusion regarding "whether section 3553(b) permits a departure because the Commission did not adequately take designated circumstances into account" is subject to

plenary review. United States v. Uca, 867 F.2d 783, 786 (3d Cir. 1989); see Koon, 518 U.S. at 98-99.

As noted above, Application Note 16 to S 2K2.1 specifically references the possibility of an upward departure if the offense of gun possession or transfer had certain characteristics, such as very large quantities of certain types of weapons, or if "the offense posed a substantial risk of death or bodily injury to multiple individuals." The District Court, again relying on the "sale on the streets" of 22 guns, concluded that this type of risk was apparent, holding that selling "a score of lethal concealable firearms on the streets is an extreme aggravating factor not taken into account by the Guidelines."

13

We cannot agree. Application Note 16 speaks in very strong terms -- "a substantial risk of death or bodily injury to multiple individuals" -- and the atypicality statutorily required for departure heightens the standard even more. Here, the number of weapons has been specifically considered in the guideline, as has the fact that the weapons governed by it are for the most part concealable firearms. And, as noted above, the conclusory attribute of "on the streets" is unfounded. We can only conclude that Cicirello's offense is within the "heartland" of S 2K2.1, clearly anticipated by its terms. See Uca, 867 F.2d at 787-90.

While citing the standard, the District Court failed to analyze how the overall departure standard -- namely, atypicality -- applied here to the specific aspect of risk of injury relied upon. It never asked the necessary question as to whether Cicirello's offense posed a substantial risk of death or bodily injury to multiple individuals in a way that falls outside the heartland of illegal gun sales.

The reasoning of other courts that have approved departures in reliance on Application Note 16(4) is instructive. In fact, in the case cited by the District Court, United States v. Alers, 852 F. Supp. 310, 315-16 (D.N.J.), aff 'd, 40 F.3d 1241 (3d Cir. 1994) (unpublished), the district court did make that inquiry and responded by finding that Alers' sale of over 400 weapons to known drug dealers over an extended period of time posed a risk"far more grave" than considered in the guidelines. The court noted that the transfers to drug dealers were not merely with knowledge of a risk of injury; rather, violence"is virtually a necessary incident of arming drug dealers." Id. at 316.

As the district court in Alers noted -- and as is also relevant here -- we said in United States v. Kikimura, 918 F.2d 1084 (3d Cir. 1990), that the guidelines regarding illegal gun activity already contain some presumption of intended unlawful use that is factored into the base offense level. Alers, 852 F. Supp. at 315 (citing Kikimura, 918 F.2d

at 1098). Departure is only warranted when the risk is not only substantial, but also atypical, based on the facts, as it was in Alers. Similarly, in United States v. Huddleston, 929

14

F.2d 1030 (5th Cir. 1991), the departure was warranted where the defendant and an accomplice had loaded 28 cases of explosives into a U-Haul trailer and transported them across a populated area of Texas in an unsafe manner. The court found that the offense level did not adequately reflect the risk entailed in the offense. And, in United States v. Brunet, 178 F. Supp. 2d 342 (S.D.N.Y.), aff 'd, 275 F.3d 215 (2d Cir. 2001), the contents of the defendant's basement apartment in a densely populated area (bomb ingredients, instruction books, assault weapons, machine guns, grenades, ammunition, silencers, spikes) were found to pose a similar atypical risk.

Moreover, the instant situation closely parallels the fact pattern and our reasoning in concluding that a departure was not warranted in United States v. Uca, 867 F.2d 783 (3d Cir. 1989). There, the district court found the possession of 56 untraceable handguns translated"to at least 56 potential acts of violence in this country or in another country. The use of handguns, unlicensed handguns, causes the perpetuation of criminal activity of persons so inclined to rob, maim, start their own private wars . . . ." Id. at 786. We ordered resentencing of Uca and his co-defendant, concluding that the mandatory nature of 18 U.S.C. S 3353(b), combined with the guidelines admonition that departure is warranted only if a factor is present to a degree "substantially in excess of that which ordinarily is involved in the offense of conviction," made such departures appropriate only in rare cases. Uca, 867 F.2d at 787 (quoting U.S.S.G. S 5K2.0). We determined that the quantity and nature of the guns were already contemplated by the guidelines, and the public risk involved was not present to an excessive degree over and above the typical weapons offense. Id. at 788-90.

We question here how the nature of the threat posed by Cicirello's sale of 22 guns really involved a substantial risk different from what S 2K2.1 was crafted to punish, or somehow more excessive in degree than the typical illegal sale of guns case. We can only conclude that it does not. The guideline clearly takes the number of guns into account, and, like the situation in Uca, we think the presumed ramifications did not constitute the substantial

15

or atypical risk of death or bodily injury that would warrant a departure from the applicable guideline range.

Accordingly, on resentencing, the District Court shall not depart upward based on Application Note 16.

III.

Departure Upward for Criminal History Category

The District Court's departure upward to criminal history category III from category I was based upon its considered view that Cicirello's brushes with the law in an 18-month period revealed an "evolution" not sufficiently reflected in category I -- in which those with no history at all will fall -- and the resulting perceived tendency toward recidivism. We do not question the Court's concern over whether category I is entirely appropriate, for it is debatable in light of the apparent trend indicated by Cicirello's recent behavior. Nonetheless, the District Court failed to adhere to two principles -- one contained in the guidelines themselves that we have cited above, and the other developed by our case precedent based on the first.

United States Sentencing Guidelines S 4A1.3 requires the court, if concerned regarding the category's underrepresentation of the seriousness of the defendant's conduct and likelihood of future offenses, to make a specific inquiry. As noted above, this inquiry requires an examination of the typical history of those in that category, and whether the defendant's history is "significantly more serious than that of most defendants in the same criminal history category." U.S.S.G. S 4A1.3.

Drawing on this statutory requirement to look to the history of other defendants in the category, we have imposed on the district courts the related responsibility to "ratchet" from one category to the next if the court is considering a departure of more than one level. As described in United States v. Hickman, 991 F.2d 1110 (3d Cir. 1993), in determining which category best represents the defendant's prior criminal history, the court must proceed sequentially through the categories and must not

16

move to the next category until it has found that a prior category still fails adequately to reflect the seriousness of the defendant's history. Id. at 1114.

In Hickman, we cited with approval Judge Newman's description of the process:

> The reason for obliging a judge to examine the next higher categories in sequence is that these categories reflect the Commission's careful assessment of how much incremental punishment a defendant should receive in light of the various degrees of a prior record. In formulating the Guidelines in general and the criminal history categories in particular, the Commission sought to implement a congressional policy of lessening disparity by narrowing, though not eliminating, the discretion of sentencing judges. At the same time, the Commission specified for each criminal history category a range of available sentences, in this

case, seventeen months, so that a sentencing judge could somewhat adjust the sentence to reflect the unique characteristics of each case. In light of the Commission's careful construction of the criminal history categories, when a judge concludes that a defendant's category is inadequate, a sentence in the range of the next higher category will usually be sufficient. At least that next higher category must be considered and found inadequate before considering an even higher category.

991 F.2d at 1114 (quoting United States v. Coe , 891 F.2d 405, 413 (2d Cir. 1989)).

We are not alone in mandating that sentencing courts perform the "typicality" assessment underS 4A1.3 and reflect their reasoning as they proceed from one category to the next. See United States v. Rusher, 966 F.2d 868, 884 (4th Cir. 1992); United States v. Gayou, 901 F.2d 746, 749 (9th Cir. 1990); United States v. Coe, 891 F.2d 405, 412-13 (2d Cir. 1989); United States v. Lopez, 871 F.2d 513, 515 (5th Cir. 1989); United States v. Miller, 874 F.2d 466, 470-71 (7th Cir. 1989).

Here, Cicirello had no adult convictions, but several recent scrapes with the law. Category I includes those with

17

0 or 1 point. Cicirello's 1 point was for a nearly 5-year-old juvenile probationary sentence. His recent theft activity consisted of, in one instance, an ARD which resulted in no finding or admission of guilt, and, in the other, conduct merely charged (the auto theft of the car for which an arrest was made 1 and 1/2 years after the fact). Category II involves 2 or 3 points, while category III would be appropriate for 4, 5, or 6 points.

The District Court did not analyze the typicality of Cicirello's history vis-a-vis others in category I. Instead it referenced the hypothetical scenario set forth in the PSI to reflect the methodology the court could use to depart upwards two categories. That reasoning was as follows: If, in lieu of the ARD, Cicirello had been convicted of auto theft, not only would he have had an adult conviction, but, in addition, the instant offense would have been committed while on probation, all of which would have resulted in 4 points. However, we cannot subscribe to a "what if " scenario as a replacement for the required reasoned analysis. If the ARD should appropriately be viewed as the equivalent of an adult conviction on some basis in fact or law, and such a history is not typical of those in category I or II, perhaps the analysis would support a two-level departure. But no such basis was stated.

The District Court thus erred by not engaging in the necessary analysis, namely, by departing from category I without noting why Cicirello's history did not "fit" within that category, and to category III without assessing the

adequacy of category II.

Accordingly, on remand, the District Court shall determine Cicirello's criminal history category by performing the analysis called for by the statute and our case law.

CONCLUSION

In light of the foregoing, we will VACATE the Judgment and Conviction Order and REMAND this case to the District Court for resentencing in accordance with this opinion.

18

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit

19