# United States Court of Appeals
## For the First Circuit

No. 01-1446

UNITED STATES OF AMERICA,

Appellee,

v.

ALDRIN DIAZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Eileen F. Shapiro, by Appointment of the Court, for appellant.
Donald C. Lockhart, Assistant U.S. Attorney, with whom
Stephanie S. Browne, Assistant U.S. Attorney, and Margaret E.
Curran, United States Attorney, were on brief, for appellee.

March 26, 2002

**COFFIN**, <u>Senior Circuit Judge</u>.  Appellant Aldrin Diaz seeks reversal of his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  He asserts that the district court committed plain error by placing the burden on him to prove his defense of justification.  He alternatively challenges the district court's decision to depart upward from the Sentencing Guidelines.  We find no plain error in the instruction, but detect flaws in the sentencing that require reconsideration of the departure.  We therefore affirm the conviction, vacate the term of imprisonment, and remand for re-sentencing.

## I. <u>Factual Background</u>

Although certain particulars of the episode underlying this appeal are disputed, the differences are largely irrelevant to the issues before us.  The essential facts, as the jury could have found them, are as follows.  In the early morning hours of January 28, 2000, appellant and his girlfriend, Christa Calder, dropped off two friends at a fast-food restaurant in Providence, Rhode Island, so they could use the restroom.  When appellant and Calder drove back to the restaurant a few minutes later, they found the two women, Brenda Ruiz and Jenny Vazquez, involved in a dispute with two other women in the restaurant's vestibule.  Appellant stepped from the car and placed himself between the two pairs of women.  Ruiz reached around him and struck one of the other women, Stephanie Zoglio, in the face.  Ruiz held a broken glass and also may have possessed a pen with a concealed knife inside it.  Zoglio

may have possessed a box cutter, although appellant testified that he never saw it.

Unsuccessful in his efforts to separate the combatants, appellant moved back toward Calder's car. Shortly thereafter, someone -- perhaps the fourth woman, Diana Villafane -- threw two objects that hit the car's hood.[1] At that point, appellant walked over to Villafane and shoved her, causing her to fall backward. A friend of Villafane's, Wayne Pemberton, responded by rushing at appellant. During the ensuing struggle, Pemberton pushed appellant onto the hood of Calder's car and fell onto the hood himself. Appellant rolled onto the ground and yelled to Calder for her gun. Calder retrieved the loaded gun from the car's glove compartment and handed it to him. Appellant waved the gun at the crowd that had gathered, yelling several times "you better run." Pemberton slipped behind a nearby truck, while making motions suggesting that he, too, was reaching for a weapon, although he did not have one. Calder testified that the scene was chaotic, the noise level was loud, and both Ruiz and Vazquez had blood on them.

Appellant, Calder, and their two friends got back into the car, with appellant at the wheel while holding the gun.[2] Before he could drive off, uniformed Providence police officers arrived and directed appellant to drop the gun. He tossed it onto Calder's lap, complied with the officers' instructions to get on the ground,

---

[1] The objects apparently were a bottle and a barbell.

[2] Appellant testified that he had cocked the gun after he saw Pemberton reach for a weapon.

-3-

and began crawling toward the police.  At about the same time, Cornell Young, an off-duty police officer in plain clothes, emerged from the restaurant with his gun drawn.  The uniformed officers -- apparently not recognizing Young as a fellow officer -- also ordered him to drop his weapon.  He was fatally shot when he failed to comply.

The gun wielded by appellant was purchased by Calder in Gray, Maine, in November 1999.  She testified that appellant had pointed the gun at her during an argument in their apartment on January 26, 2000 -- two days before the restaurant incident -- and also had taken the gun to his mother's house on or about January 7.

At trial, appellant sought to justify his use of the weapon during the fracas at the restaurant as an attempt to break up the escalating fight.  He testified that he felt surrounded, dazed from having been punched in the face, and in fear for his life because he thought he saw Pemberton reaching for a gun.  The district court charged the jury that appellant had asserted a defense of justification and that he was obliged to prove the defense by a fair preponderance of the evidence.  When discussing the issue at the charging conference, the judge specifically referred to conflicting precedent on whether the defendant or government bore the burden of proof on the justification defense, concluding that circuit and Supreme Court precedent required that affirmative defenses be proven by the defendant.  Neither the government nor defense counsel objected to the instruction, either at the charging conference or after the actual charge was given to the jury.

Appellant was sentenced to the statutory maximum of 120 months in prison.  The district court relied on three separate guidelines provisions for a four-level departure in the base offense level, which represented an increase of at least thirty-three months in appellant's sentence.

On appeal, appellant first claims that the district court erred in placing the burden on him to prove justification.  He acknowledges that, having failed to object at trial to the instruction, he must demonstrate that the error was plain.  If he fails to meet this standard, he seeks review of his sentence, asserting that the district court had no legitimate basis to depart upward from the guidelines.  We address these issues in sequence.

## II. Justification and the Burden of Proof

Appellant's effort to set aside his conviction based on the district court's justification instruction is severely hampered by his failure to interpose a contemporaneous objection.  To vault the high hurdle imposed by the plain error standard, appellant must demonstrate that an error occurred and that it was clear or obvious.  United States v. Olano, 507 U.S. 725, 732 (1993); United States v. Paniagua-Ramos, 251 F.3d 242, 246 (1st Cir. 2001).[3]  To obtain relief from his conviction, therefore, appellant must show not only that the justification instruction was incorrect but also

_____

[3] The four-part test also requires a showing that the error affected substantial rights and "so seriously impaired the fairness, integrity, or public reputation of the proceedings as to threaten a miscarriage of justice." Paniagua-Ramos, 252 F.3d at 246.

that it was obviously so.  The state of the law forecloses such a conclusion.

Three circuit courts have explicitly considered whether the prosecution or defense bears the burden of proof on a justification defense to a felon-in-possession charge, and they have reached different conclusions.  See United States v. Dodd, 225 F.3d 340, 350 (3d Cir. 2000); United States v. Deleveaux, 205 F.3d 1292, 1300 (11th Cir. 2000); United States v. Talbott, 78 F.3d 1183, 1186 (7th Cir. 1996) (per curiam).  The Third and Eleventh Circuits held that the defendant must prove the defense by a preponderance of the evidence, while the Seventh Circuit ruled that the government must negate the defense beyond a reasonable doubt.  If a circuit conflict exists on a question, and the law is unsettled in the circuit in which the appeal was taken, any error cannot be plain or obvious.  United States v. Gerrow, 232 F.3d 831, 835 (11th Cir. 2000); see United States v. Gilberg, 75 F.3d 15, 21-22 (1st Cir. 1996).

Appellant asserts that this sudden-death principle is inapplicable here because First Circuit law is settled in his favor.  He invokes two decisions that involved a defense of duress to drug charges, United States v. Arthurs, 73 F.3d 444, 448 (1st Cir. 1996), and United States v. Amparo, 961 F.2d 288, 291 (1st Cir. 1992).  We held in Amparo that if the defendant produces sufficient evidence to warrant a duress instruction, the government must prove beyond a reasonable doubt that the defendant's criminal acts were not in fact the product of duress.  See 961 F.2d at 291.

The same result was reached in Arthurs, in reliance on Amparo. See 73 F.3d at 448. Appellant cites, in addition, the First Circuit's pattern jury instructions, which state that the government has the burden of disproving the defenses of self-defense and duress once they have been properly raised. First Circuit Pattern Criminal Jury Instructions §§ 5.04 and 5.05 (1998) ("First Circuit Instructions").

While these First Circuit authorities seem facially apropos to appellant's position, closer scrutiny reveals their shortcomings. The court in Amparo explicitly limited its holding on the government's burden of disproving duress to those cases in which "the charged crime requires mens rea," 961 F.2d at 291. In both Amparo and Arthurs, the defendants were charged, inter alia, with "knowingly or intentionally" possessing cocaine with the intent to distribute it. The pattern jury instructions reflect a similar limitation; although some portions of the instructions express a broader proposition,[4] the Comment to the provision on "Duress," § 5.05, echoes the Amparo qualification that "[t]he burden of persuasion remains with the government, at least if the charged crime requires mens rea." This allocation of the burden is logical

_____

[4] For example, the Introductory Comment on the section covering defenses states:

> Except for the insanity defense, the defendant need only meet a burden of production, in which event the burden of persuasion is on the prosecution to negate the defense beyond a reasonable doubt.

First Circuit Instructions § 5, intro. cmt.

-7-

in light of the government's obligation to prove all elements of a crime, including the specified criminal intent.[5]

Whether <u>Amparo</u>'s articulation of the burden extends to a case in which the only charge is possession of a firearm by a felon -- a strictly worded crime without a specific <u>mens</u> <u>rea</u> -- is at least debatable in light of its qualifying language. Indeed, were we to reach the merits, we think it problematic whether <u>Amparo</u>'s holding would survive in this different context. We particularly note the thoughtful analyses of the Third and Eleventh circuits, which led those courts to conclude that the burden to prove justification constitutionally and pragmatically is properly placed on the defendant in a felon-in-possession case. <u>See</u> <u>Dodd</u>, 225 F.3d at 343-350; <u>Deleveaux</u>, 205 F.3d at 1298-1301.[6] It strikes us as good sense to examine both the particular crime and the particular defense at issue in assigning the burden of proof. <u>See</u> <u>Dodd</u>, 225 F.3d at 349 (noting the "diversity of analytical solutions that the appellate courts have reached with respect to various affirmative

_____

[5] Indeed, the Due Process Clause of the Fourteenth Amendment requires the government to disprove beyond a reasonable doubt any defenses that negate an element of the charged offense. <u>See</u> <u>Patterson</u> v. <u>New York</u>, 432 U.S. 197, 210 (1977).

[6] Both courts initially noted that there was no constitutional bar to placing the burden on the defendant. <u>See</u> <u>Dodd</u>, 225 F.3d at 344; <u>Deleveaux</u>, 205 F.3d at 1298-99. Both also pointed to Congress's intent to broadly prohibit possession of firearms by convicted felons, <u>see</u> <u>Dodd</u>, 225 F.3d at 350; <u>Deleveaux</u>, 205 F.3d at 1300, and they recognized that the defendant "will usually be best-situated to produce evidence relating to each element of this affirmative defense," <u>Deleveaux</u>, 205 F.3d at 1300 (quoted in <u>Dodd</u>, 225 F.3d at 347, 350). The Third Circuit further observed that placing the burden on the defendant was consistent with the common law, which placed the burden on the defendant to prove all affirmative defenses. <u>See</u> <u>Dodd</u>, 225 F.3d at 348.

defenses," and rejecting the argument that consistency required the court to follow entrapment precedents that place the burden on the government).

We need delve no further into the merits of the issue. What we have said thus far suffices to show that the law is unsettled, both within and outside the First Circuit, and appellant is therefore unable to meet the plain error standard. Even if it were error to place the burden of proving justification on appellant -- a proposition we doubt -- any such error was not plain. Consequently, we affirm the judgment of conviction.

### III. Sentencing Departures

The district court invoked three provisions of the Sentencing Guidelines to increase appellant's sentence from the term specified for his base offense level and criminal history category -- a range of 70 to 87 months[7] -- to the statutory maximum of 120 months. This represented an upward departure of four levels. We review de novo whether the district court utilized a proper basis for departure, United States v. Chapman, 241 F.3d 57, 63 (1st Cir. 2001), but apply the clear error standard to the court's determination that the circumstances "warrant[ed] the departure in the case at hand," id. The extent of the departure will be upheld as reasonable unless it reflects a manifest abuse of discretion. United States v. Amirault, 224 F.3d 9, 14 (1st Cir. 2000).

---

[7] This calculation included a separate two-level enhancement for obstruction of justice, bringing appellant's base offense level to 20.

As we discuss below, the district court's erroneous reliance on one basis for departure, combined with lack of advance notice of its use of a second departure provision and the uncertain sufficiency of the third provision as the sole basis for the departure, requires that the case be remanded for re-sentencing. We explain our conclusion by addressing each of the three relevant provisions of the guidelines.

A. The Departure under U.S.S.G. § 4A1.3, p.s.

This provision allows a district court to depart from the otherwise applicable sentencing range "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes . . . ." Appellant's criminal history score of 19 gave him six points more than the threshold for Criminal History Category VI, the highest category in the guidelines. In such a case, a court seeking to impose a sentence appropriate for the defendant's record may depart from the guideline range by moving down the sentencing table to a higher offense level. U.S.S.G § 4A1.3, p.s.; see Chapman, 241 F.3d at 63. In other words, when the criminal history category cannot be adjusted upward to account for a defendant's score because he already is in the top category, a court "may instead adjust upward the offense level in order to arrive at an appropriate sentence." Chapman, 241 F.3d at 63. Based on this provision, the district court moved two levels from offense level 20 to offense level 22,

which provided a sentencing range of 84 to 105 months, an increase of eighteen months at the maximum end of the range.

Appellant challenges this departure on two fronts.  First, he contends that his criminal history was not sufficiently "egregious" to trigger § 4A1.3.  See U.S.S.G. § 4A1.3, p.s. (allowing departure in the case of "an egregious, serious criminal record").  Second, he argues that he is entitled to a remand because he received no notice that the district court intended to depart on this basis -- which, as acknowledged by the government, was a violation of U.S.S.G. § 6A1.3(a), p.s. and Fed. R. Crim. P. 32(c)(1).  See Burns v. United States, 501 U.S. 129, 138-39 (1991); United States v. Martin, 221 F.3d 52, 55-56 (1st Cir. 2000).  He asserts that the omission was not harmless, as the lack of notice deprived him of the opportunity to fully demonstrate why this departure was unwarranted.  He further argues that the record fails to show that the court would have imposed a four-level upward departure even if § 4A1.3 were not considered.

We need not evaluate the egregiousness of appellant's record because we find his notice argument to be dispositive.  The court departed a total of four levels based on three provisions.  Two levels were attributed explicitly to § 4A1.3 -- the basis for which appellant received no notice.  The other departures were not assigned any particular increase; the court simply moved up to the statutory maximum in reliance on the two additional provisions.  To find harmless error, as indeed the government argues, we would have to conclude that the court inevitably would have departed upward by

four levels based solely on those two other factors. See Williams v. United States, 503 U.S. 193, 204 (1992) ("[A] remand is appropriate unless the reviewing court concludes, on the record as a whole . . . that the error did not affect the district court's selection of the sentence imposed.").[8] One of those provisions, however, we find inapplicable. See Section B infra. We cannot say with assurance, based on the factual circumstances, that the court would have ordered the same upward departure in reliance solely on the other. See Section C infra. Consequently, we must remand for re-sentencing.

B. The Departure under U.S.S.G. § 2K2.1

This provision, which governs firearms offenses, establishes a range of penalties depending upon the particulars of the crime and the defendant's criminal background. Application Note 16 to § 2K2.1 states that an upward departure may be warranted in four alternative circumstances: (1) the number of firearms significantly exceeded fifty; (2) the offense involved multiple military assault

---

[8] In United States v. Jackson, 32 F.3d 1101, 1110 (7th Cir. 1994), the court noted that the harmless error doctrine in lack-of-notice cases "requires that we decide whether the same sentence would have been imposed if the district court either: (1) had not relied on the factor for which no notice was given, or (2) had given adequate notice." Appellant's criminal background was not so extensive or serious that we can say that the court certainly would have imposed the departure, regardless of a fully prepared objection from appellant. Cf. Chapman, 241 F.3d at 64 (thirty-six criminal history points deemed "extreme," along with immediate recidivism and violent crimes); United States v. McKinley, 84 F.3d 904, 910-11 (7th Cir. 1996) (forty points warranted departure); United States v. Carillo-Alvarez, 3 F.3d 316, 320-23 (9th Cir. 1993) (nineteen points -- the same number as appellant -- insufficient to support departure). We thus must consider whether the court would have imposed the same sentence without reliance on U.S.S.G. § 4A1.3.

type weapons or similarly destructive guns and other devices; (3) the offense involved large quantities of armor-piercing ammunition, or (4) "the offense posed a substantial risk of death or bodily injury to multiple individuals." U.S.S.G. § 2K2.1, cmt. n.16; see generally United States v. Diaz-Martinez, 71 F.3d 946, 952-53 (1st Cir. 1995).

The district court concluded that a departure was appropriate under the fourth clause of Note 16 because appellant "had a firearm cocked and pointed, thus posing a substantial risk of death or bodily injury to a multitude of individuals who were out in front of that restaurant that night." The judge noted that "[j]ust a little action on the trigger would have caused the bullet to be ejected toward a crowd of people and someone could have been killed."

Appellant asserts that the district court improperly invoked Application Note 16 for two reasons. First, he contends that his circumstances do not fit into the category of uniquely dangerous firearms crimes covered by Note 16. Each of the first three clauses reflects a concern about extraordinary threats to public safety based on either the quantity or nature of the firearms at issue. The fourth clause, he maintains, reflects a similar concern that is inapplicable to his brandishing of a single .22-caliber pistol capable of firing only one bullet at a time. Second, appellant argues that the threat posed by his display of the gun already was taken into account in computing his sentence. The court imposed a four-level upward adjustment in his offense level

under § 2K2.1(b)(5), which provides for such an increase when a firearm was used or possessed in connection with another felony offense. The district court explained the basis for this upward adjustment as follows:

> He clearly possessed this firearm in connection with another felony offense, in fact, multiple felony offenses. He assaulted a number of people with this firearm by holding this crowd at bay with the firearm and cocking the firearm ready to fire. It's a wonder somebody wasn't killed at that point.

Because the court's expressed rationale for the four-level adjustment was essentially the same as his reason for imposing a departure under Note 16, appellant argues that the departure constituted impermissible double-counting.

We are persuaded that the court's use of Note 16 as a basis for departure was in error. We agree with appellant that clause four of the Note, when read in context with the three provisions that precede it, is reasonably interpreted to authorize departure for conduct that is dangerous to an extraordinary degree. The other prerequisites of Note 16 -- firearms exceeding fifty in number, use of military assault type weapons, or large quantities of armor-piercing ammunition -- indicate to us an intent that the threat to multiple individuals of death or bodily injury be more obvious and potent than the present record reveals. Here, the court noted the crowd and observed that "someone could have been killed" had defendant discharged the cocked weapon, but we conclude that brandishing a single small weapon in a single episode, with no evidence of an intent to fire, is insufficient to support a departure aimed at punishing conduct that puts multiple individuals

-14-

at substantial risk of injury or death. By contrast, in <u>Diaz-Martinez</u>, 71 F.3d at 952-53, we affirmed a Note 16 departure where the defendant had engaged in a shootout in a congested shopping center parking lot and had rammed his car into another vehicle. Surrounding vehicles were riddled with bullet holes. <u>See</u> <u>also</u> <u>United States</u> v. <u>Brunet</u>, 178 F. Supp. 2d 342, 344-45 (S.D.N.Y.), <u>aff'd</u>, 275 F.3d 215 (2d Cir. 2001) (applying Note 16(4) where agents retrieved, <u>inter</u> <u>alia</u>, a block of explosives that could have destroyed several buildings if detonated); <u>United States</u> v. <u>Alers</u>, 852 F. Supp. 310, 314-16 (D.N.J.), <u>aff'd</u>, 40 F.3d 1241 (3d Cir. 1994) (applying Note 16(4) where defendant caused more than 400 guns to be distributed in the drug underworld).

Thus, even if the reckless brandishing of this type of loaded handgun could in other circumstances support use of Note 16(4), the provision's applicability to a limited category of unusually dangerous firearms crimes renders it inapposite here. Although some increase beyond the standard sentence for possession of a firearm by a felon was warranted based on the risk posed by appellant's reckless conduct, Note 16(4) was not in these circumstances an available path to reach that result. The court took advantage of an appropriate alternative when it imposed the four-level adjustment under § 2K2.1(b)(5). To notch it up again pursuant to Note 16 would overstate the severity of appellant's criminal activity by equating it with the extraordinarily dangerous conduct reflected in the other subsections of Note 16. We

therefore conclude that the departure under Note 16 of § 2K2.1 was improper.

C. The Departure under § 5K2.1, p.s.

This provision of the guidelines is a policy statement providing for an upward departure when death results from the defendant's criminal activity. Among the factors to be considered in evaluating whether such a departure is warranted are (1) the defendant's state of mind, (2) the degree of planning or preparation, (3) whether multiple deaths resulted, and (4) the means by which life was taken.  U.S.S.G. § 5K2.1, p.s.

The district court found the provision applicable because appellant

> set in motion a whole series of events which ultimately led to the death of Officer Young.  If he hadn't drawn that pistol, if he hadn't brandished that firearm, Officer Young would be alive today.  The police officers would not have drawn their weapons.  Officer Young undoubtedly would not have drawn a weapon.  This whole tragedy would have been avoided.  So there's a basis for upward departure.

Appellant argues that Officer Young's death was an unpredictable occurrence insufficiently related to his criminal conduct to justify prolonging his term of imprisonment.  He notes that none of the factors cited in the policy statement weigh toward departure -- not only was his offense conduct spontaneous, but it also was unforeseeable that Officer Young would neither be recognized by fellow officers nor respond to their command that he drop his gun.  In sum, he argues, the circumstances do not warrant punishment based on the unfortunate, but completely chance, death of the officer.

Although we can agree that appellant's culpability is at the low end of the spectrum contemplated by the policy statement, in that he was an indirect cause of Officer Young's death, we are unable to conclude that he is outside its scope. By using a weapon, appellant invited weapon use by others. Unintended consequences are often the result of reckless behavior, and while he could not have anticipated the particular sequence of events, appellant should have foreseen the possibility of serious harm as a result of his waving a cocked and loaded gun at a crowd of people. We see no basis for foreclosing departure under § 5K2.1 when a defendant puts into motion a chain of events that risks serious injury or death, even when an intent to harm is entirely absent and the defendant was not directly responsible for the death. See United States v. Fortier, 242 F.3d 1224, 1232-33 (10th Cir. 2001) (an increased sentence may be imposed for "harms that were a 'reasonably foreseeable' consequence of a defendant's conduct even where a defendant did not directly cause the specified harm") (citation omitted).

Ameliorating factors may, of course, lead some trial judges to refrain from a departure under § 5K2.1, and, in any event, such factors should bear on the extent of the departure. Here, the evidence supports appellant's claim that he had no intent to use the gun other than as a show of force designed to permit his and his friends' escape from an escalating confrontation.[9] At about

_____

[9] Although the evidence was not entirely consistent, most of the witnesses testified that appellant pointed the gun in the air when confronting the onlookers.

the time of the fatal shooting, appellant had released the weapon and was complying with law enforcement orders that he get down on the ground and move toward them. The death itself was an unfortunate tragedy of mis-identification. Given these circumstances, we think it unlikely that the court would have departed upward four levels based solely on § 5K2.1. This is particularly so because, as noted above, the risk of serious injury from appellant's conduct already was reflected in the four-level adjustment under § 2K2.1(b)(5).

The government suggests that the district court would have increased appellant's sentence to the statutory maximum even without reliance on the three separate departure provisions, citing the judge's statement that he "would depart upward beyond the statutory maximum if I had that power." At the time he made that comment, however, the judge believed he had multiple grounds for departure. Moreover, the statement reflects the court's understandable frustration with appellant's allocution, in which appellant denied any responsibility for Officer Young's death and repeatedly ignored the judge's and marshal's directives that he stop his rambling, offensive personal comments, which included references to the judge's son and brother.

The record therefore does not permit us to conclude that the lack of notice regarding § 4A1.3 and the error in applying Note 16 of § 2K2.1 were harmless. With the one valid ground of departure having limited force in the particular circumstances, the sentence

inevitably reflects reliance on the other two provisions.  A remand for re-sentencing is required.[10]

## IV. Conclusion

We affirm appellant's conviction, rejecting his claim that the district court committed plain error by instructing the jury that he bore the burden of proving that his firearm possession was justified.  The circuits are split on the burden of proving justification in a felon-in-possession case, and First Circuit law on that particular question is unsettled.  The case must be remanded to the district court for re-sentencing, however, because two of three provisions on which the court based an upward departure were utilized improperly.

The judgment of conviction is affirmed, the sentence is vacated, and the case is remanded for re-sentencing.

---

[10] We note that the court's signed judgment states that the "Total Offense Level" is 20 and lists only Note 16 of § 2K2.1 and § 5K2.1 as the bases for departure -- apparently omitting the two-level departure based on § 4A1.3, the provision for which appellant lacked notice.  Neither appellant nor the government address the seeming discrepancy, and because both assume that the sentence reflected reliance on that provision, we do likewise.  In any event, the lack of clarity further confirms the need for a remand.