

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-15-2004

# USA v. Kitchen

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4290

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Kitchen" (2004). *2004 Decisions.* Paper 1091.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1091

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  02-4290

UNITED STATES OF AMERICA

v.

SYLVESTER KITCHEN,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-CR-00245)
District Judge: The Honorable James T. Giles

_____

Submitted Pursuant to LAR 34.1
January 13, 2004

Before: BARRY, SMITH, and GREENBERG, *Circuit Judges*

(Filed: January 14, 2004)

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge.*

Defendant Sylvester Kitchen pleaded guilty to 19 counts of making false

statements to a federally licensed firearms dealer in violation of 18 U.S.C. § 924(a)(1)(A);

one count of unlawful dealing in firearms in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D); and two counts of transferring firearms to a convicted felon in violation of 18 U.S.C. § 922(d)(1) and 924(a)(2). The District Court sentenced Kitchen to 57 months imprisonment. Kitchen appeals the District Court's decision at sentencing to depart upward pursuant to U.S.S.G. § 5K2.2 because of a significant physical injury sustained by a third person.

I.

Between March 2000 and October 2001, Kitchen purchased 19 separate firearms from licensed firearms dealers in the Philadelphia area and then illegally resold those firearms to different individuals. Kitchen resold multiple firearms to two individuals who Kitchen knew to be drug dealers. On at least one occasion, Kitchen altered or obliterated the serial number from a firearm that he resold.

On April 14, 2000, Kitchen purchased and illegally resold a 9 mm Bryco Arms semiautomatic pistol. Thirteen months later, that firearm was used by a motorist to shoot Julio Muniz in an apparent "road rage" incident.[1] Muniz was shot multiple times in the abdomen and legs. Muniz suffered a shattered femur and severe tissue and nerve damage, and required extensive surgery to reconstruct one of his legs.[2]

---

[1] We use the term "road rage" to describe the circumstances of the shooting of Muniz, as this term was used by both parties.

[2] Government authorities recovered two of the 19 firearms sold by Kitchen. The firearm used to shoot Muniz was seized on the day of the shooting. A second firearm—also a 9 mm Bryco pistol—was discovered along with 12 rounds of ammunition

How the firearm used to shoot Muniz traveled from Kitchen's hands is unknown. The individual who shot Muniz did not obtain the firearm directly from Kitchen, and the record contains no evidence regarding the identity of the person to whom Kitchen originally sold that firearm.

Under the Sentencing Guidelines, Kitchen's convictions resulted in a base offense level of 14. Kitchen's offense level was adjusted upward (a) two levels because one of the firearms had an altered or obliterated serial number, U.S.S.G. § 2K2.1(b)(4); (b) four levels because there were between 8 and 24 firearms illegally sold, § 2K2.1(b)(1)(B); and (c) four levels because Kitchen distributed firearms to individuals whom he knew were involved in illegal drug sales, § 2K2.1(b)(5). Kitchen's offense level was adjusted downward three levels for acceptance of responsibility. U.S.S.G. § 3E1.1. Because Kitchen had no criminal history, his offense level yielded a sentencing range of 37 to 46 months. Pursuant to § 5K2.2 and based on the injuries to Muniz, the District Court departed upward two levels for engaging in conduct that resulted in significant injury to another person, yielding a sentencing range of 46 to 57 months. The District Court sentenced Kitchen to the maximum 57 months imprisonment.

Kitchen appeals only the District Court's upward departure under § 5K2.2. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). As this is an appeal

in a student's book bag at Spring Garden Elementary School in Philadelphia. No one is known to have been injured by this second firearm.

challenging a departure from the applicable guidelines range, we review *de novo* the District Court's application of the guidelines to the facts.[3]

## II.

A district court may "impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)); *see also United States v. Philiposian*, 267 F.3d 214, 219 (3d Cir. 2001).[4] The Sentencing Guidelines provide a list of "encouraged factors" upon which departure may be based. *Koon v. United States*, 518 U.S. 81, 94 (1996); *see* U.S.S.G. § 5K2.0 ("identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines"). Section 5K2.2 of the Sentencing Guidelines identifies

---

[3] Section 401(d)(2) of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 (the "PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650, 670, amended 18 U.S.C. § 3742, which governs our review of sentencing appeals. *See United States v. Frazier*, 340 F.3d 5, 14 (1st Cir. 2003), *cert. denied*, ___ S.Ct. ___, 2003 WL 22926814 (Dec. 15, 2003); *United States v. Jones*, 332 F.3d 1294, 1299 (10th Cir. 2003), *cert. denied*, 124 S.Ct. 457 (2003).

[4] The District Court's judgment was entered on November 19, 2002. In response to the PROTECT Act, and during the pendency of this appeal, the United States Sentencing Commission amended U.S.S.G. § 5K2.0 effective October 27, 2003. Pursuant to 18 U.S.C. § 3553(a)(4)(A) and U.S.S.G. § 1B1.11(a), we follow the guidelines in effect on the date that Kitchen was sentenced. *See United States v. Brannan*, 74 F.3d 448, 450 n.1 (3d Cir. 1996).

"significant personal injury" as an encouraged factor for departure:

> If significant physical injury resulted, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. If the injury is less serious or if the defendant (though criminally negligent) did not knowingly create the risk of harm, a less substantial departure would be indicated. In general, the same considerations apply as in § 5K2.1 [Death].

Departures based on encouraged factors are authorized if the substantive offense Guideline does not already take the factor into account. *Koon*, 518 U.S. at 96.

Kitchen concedes that the injuries suffered by Muniz are significant and were caused by the use of one of the firearms that Kitchen illegally resold. Nevertheless, Kitchen argues that the substantive guideline applicable to firearms offenses, U.S.S.G. § 2K2.1, already addresses the factors on which the District Court based its departure. We disagree.

Our cases establish that § 2K2.1 generally precludes departure based on the *potential* that illegally sold firearms will be used in future crimes. *United States v. Cicirello*, 301 F.3d 135, 143-45 (3d Cir. 2002); *United States v. Bass*, 54 F.3d 125, 130-31 (3d Cir. 1995); *United States v. Uca*, 867 F.2d 783, 788-90 (3d Cir. 1989). This is because "the guidelines regarding illegal gun activity already contain some presumption of intended unlawful use that is factored into the base offense level." *Cicirello*, 301 F.3d at 144. But although § 2K2.1 generally addresses the *potential* for the criminal use of

5

illegally sold firearms, that guideline does not account for *actual* injury inflicted with such weapons. Section 2K2.1 thus does not address the critical factor presented to the District Court in this case, namely, the significant physical injuries to Muniz. *Compare* U.S.S.G. § 2B3.1(b)(3) (adjusting the offense level for robbery "[i]f any victim sustained bodily injury"); U.S.S.G. § 5K2.0 ("[P]hysical injury would not warrant departure from the guidelines when the robbery offense guideline is applicable because the robbery guideline includes a specific adjustment based on the extent of any injury."). We therefore agree with the District Court that Muniz's injuries take this case out of the "heartland" of § 2K2.1. U.S.S.G., Ch.1, pt. A § 4(b) ("The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes."); *Koon*, 518 U.S. at 92-94.

III.

Kitchen further argues that § 5K2.2 requires a "legal nexus" between the defendant's conduct and the injury that is the basis for departure, and that such a nexus is absent in this case. Kitchen explains:

[N]o evidence exists the Appellant sold the handgun [that was used to shoot Muniz] to a known felon; no evidence exists the Appellant sold the handgun to the buyer of the handgun so that the buyer could engage in criminal activity; no evidence exists as to how many hands the handgun passed prior to the shooting thirteen (13) months later; no evidence exists the buyer of the handgun was the shooter; no evidence exists the Appellant was involved in, part of, or aware of the shooting of Mr. Muniz; and, the serial number of this handgun was no[t] obliterated indicating that neither the Appellant, the buyer, nor the ultimate possessor(s) of the handgun sought to conceal the identity of the handgun for any illegal purpose.

6

Br. at 14-15.

A careful reading of § 5K2.2 demonstrates that the nexus sufficient to support departure is broader than that advanced by Kitchen. Section 5K2.2 expressly applies where the injury is "knowingly risked," as opposed to "intended." Indeed, the Guideline applies—albeit with "a less substantial departure"—where "the defendant (though criminally negligent) did not knowingly create the risk of harm." "Criminally negligent" is defined elsewhere in the Sentencing Guidelines as referring to "conduct that involves a gross deviation from the standard of care that a reasonable person would exercise under the circumstances, but which is not reckless." U.S.S.G. § 2A1.4 cmt. n.2.

We conclude that Kitchen was sufficiently culpable to warrant departure under § 5K2.2. As our decisions in *Cicirello*, *Uca*, and *Bass* make clear, the risk that illegal firearms will be used in future crimes lies at the core of the substantive firearms guidelines. Although this potential, standing alone, ordinarily is not a proper basis for departure, here that potential was realized. By engaging in the offense of conviction, Kitchen knowingly created and deliberately disregarded the risk that one or more firearms would be used to criminally injure another person.[5] We therefore agree with the District

---

[5] As discussed above, Kitchen's sentence was enhanced for selling firearms to known criminals (in this case, known drug dealers) and for obliterating the serial number from one firearm. These enhancements, neither of which is challenged on appeal, reinforce our conclusion that Kitchen was aware of the possible downstream use of illegally resold firearms. Although the record contains no evidence that the firearm used to shoot Muniz was sold to a known felon, or that its serial number was removed, his conduct with respect to other firearms sales confirms his appreciation of the risk of significant physical

7

Court that Kitchen's illegal sale of a firearm recklessly initiated "the chain of circumstances that resulted in injury to Mr. Muniz." App. at 66; *see United States v. Diaz*, 285 F.3d 92, 101 (1st Cir. 2002) ("We see no basis for foreclosing departure under § 5K2.1 when a defendant puts into motion a chain of events that risks serious injury or death, even when an intent to harm is entirely absent and the defendant was not directly responsible for the death."); *United States v. White*, 979 F.2d 539, 544-45 (7th Cir. 1992) (affirming departure under § 5K2.1 for defendant convicted of interstate transportation of a minor for the purpose of prostitution; defendant's offense knowingly risked the minor's death because it "'put into motion a scenario that had the inevitable tragic result that this one did'" (quoting sentencing court)); *United States v. Ihegworo*, 959 F.2d 26, 29-30 (5th Cir. 1992) (affirming upward departure under § 5K2.1 for defendant convicted of distribution of heroin based on the accidental overdose of one of his customers; court held that defendant "'reasonably foresaw death or serious bodily injury as a result of the heroin he was distributing'" (quoting sentencing court)).

Importantly, the District Court did take Kitchen's attenuated role in Muniz's injuries into account in determining the extent of the departure, which is not challenged on appeal. *See, e.g., Diaz*, 285 F.3d at 101 (observing, in the context of § 5K2.1, that defendant's intent should bear on the extent of departure). The Government had moved for a six-level departure. Kitchen argued that, if a departure were granted, it should be

---

injury resulting from his offense.

8

limited to two levels because Kitchen's conduct was only indirectly related to Muniz's injuries. The District Court agreed, limiting the departure to two levels:

> There is no proof, though, that the person to whom he sold the guns, the one involved in the classroom and the one that shot Mr. Muniz, were sold to drug dealers, or that the persons who possessed them at the end were drug dealers.

> The guns were not those with obliterated serial numbers. There's no evidence that the persons who possessed them were convicted felons. . . . [A]nd there's no evidence that the persons who possessed the guns at the end of the events pertaining to those guns were the persons who purchased the guns directly from Mr. Kitchen.

App. at 66-67.

## IV.

Departure in this case was available under § 5K2.2 because the guidelines applicable to Kitchen's offense do not adequately account for the actual injuries suffered by Muniz. Furthermore, because Kitchen recklessly initiated a course of events that resulted in Muniz's injuries, departure was warranted in this case. Accordingly, we will affirm the judgment of the District Court.

_____

TO THE CLERK:

Please file the foregoing Opinion.

        /s/ D. Brooks Smith

        Circuit Judge

Date: January 14, 2004